**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge William J. Martínez**

Civil Action No. 11-cv-02888-WJM-MJW

LISA STRANSKY,
NATALIE FIORE,
ERIN PEREZ,
HELEN GEIST,
ANGELA VANLENGEN,
BROOKE THOMPSON,
MILDRED HAMILTON, and
NICOLE WAGNER,

individually and on behalf of others
similarly situated,

     Plaintiffs,

v.

HEALTHONE OF DENVER, INC.,

     Defendant.

---

**ORDER GRANTING PLAINTIFFS' MOTION FOR INJUNCTIVE RELIEF AND
DENYING PLAINTIFFS' MOTION FOR CONTEMPT**

---

In this collective action, Plaintiffs Lisa Stransky, Natalie Fiore, Erin Perez, Helen

Geist, Angela Vanlengen, Brooke Thompson, Mildred Hamilton, and Nicole Wagner

("Plaintiffs"), individually and on behalf of all others similarly situated, bring claims

against Defendant HealthONE of Denver, Inc.  ("Defendant" or "HealthONE") alleging

that Defendant failed to adequately compensate them in violation of the Fair Labor

Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq*.  Before the Court are Plaintiffs'

Motion for Injunctive Relief and a Finding of Contempt, made orally before the Court on

February 27, 2013 (*see* ECF No. 118 at 3), Plaintiffs' Motion for Sanctions (ECF No.

101), and Defendant's Motion for Order to Approve Notice to the Conditional Class

(ECF No. 103).

## I. BACKGROUND

Defendant owns and operates hospitals and other healthcare facilities in the

Denver, Colorado metropolitan area that employ hourly, non-exempt healthcare

workers in their day-to-day operations.  (ECF No. 23 ¶¶ 1-2.)  The trade names used by

Defendant are: The Medical Center of Aurora ("TMCA"); Centennial Medical Plaza

(affiliated with TMCA); Presbyterian/St. Luke's Medical Center ("PSL"); Rose Medical

Center; Swedish Medical Center; Swedish Southwest ER (affiliated with Swedish

Medical Center); and Sky Ridge Medical Center.  (*Id*. at ¶ 2.)  Plaintiffs were all

employed by Defendant during some period of time from approximately 2008 through

the present as non-exempt hourly employees.  (*Id*. at ¶ 26.)  The named Plaintiffs are

non-exempt nurses and a surgical technician who work or worked in the Labor &

Delivery ("L&D") department at TMCA.  (*Id*. at ¶¶ 14-25.)  L&D is part of the Women's

Services group at TMCA.  (Declaration of Neva Spencer ¶ 3, ECF No. 39, Ex. 1.)

Plaintiffs filed their initial Collective Action Complaint on November 7, 2011

(ECF No. 1), and an Amended Complaint on February 23, 2012.  (ECF No. 23.)

Plaintiffs bring claims under the FLSA and Colorado employment laws, individually and

on behalf of all others similarly situated, claiming unpaid wages and overtime pay.  (*Id*.

at ¶¶ 28-48.)  Plaintiffs allege that Defendant failed to pay them and other similarly

situated employees for time spent changing into and out of hospital scrubs, walking to

and from locker rooms, and for meal periods when they were not meaningfully off duty. (*Id.*)

On May 1, 2012, Plaintiffs filed a Motion for Conditional Certification and for judicial notice ("Notice") to all current and former employees of Defendant that fit into Plaintiffs' class definition and have not already joined in this action (the putative "Opt-in Plaintiffs"). (ECF No. 35.) This putative class is comprised of approximately 11,300 individuals. (ECF No. 93 at 3.) Also, on May 1, 2012, Plaintiffs filed a Motion to Toll the Statute of Limitations for all Opt-in Plaintiffs from November 7, 2011, the date that the original lawsuit was filed, until 90 days after the Opt-in Plaintiffs receive the Notice of this lawsuit. (ECF No. 36.) On June 14, 2012, the Court issued an order granting Plaintiffs' Motion to Toll in part, but ruling that the tolling period would begin on May 1, 2012, until 90 days after the date the Opt-in Plaintiffs receive Notice. (ECF No. 45.)

On December 6, 2012, the Court granted conditional certification to the class, adopted Plaintiffs' proposed Notice with modifications, and authorized issuance of the proposed Notice. (ECF No. 68 at 10-11.) However, the parties continued to disagree regarding the content of the Notice, culminating in a joint motion for a hearing. (ECF No. 87.)

On February 14, 2013, the Court held a hearing regarding the Notice and the permissible scope of communication with the Opt-in Plaintiffs. (ECF No. 109.) After hearing from the parties, the Court issued an order from the bench specifying the content of the Notice and the approved manner of distribution. (*Id.*) In accordance with the Court's order, Plaintiffs' and Defendant's counsel conferred regarding the Notice, but failed to agree on the formatting of certain language, resulting in the two versions of

the Notice attached to Defendant's February 25, 2013 Motion for Order to Approve

Notice to Conditional Class.  (ECF No. 103 Exs. C, D.)

On February 22, 2013, Plaintiffs filed an Emergency Motion for a Temporary

Restraining Order ("TRO"), after discovering that Defendant had held staff meetings

with prospective Opt-in Plaintiffs in which the litigation was discussed in an allegedly

misleading and intimidating way.  (ECF No. 97.)  The Court ordered that Defendant

immediately cease and desist all such meetings, pending a hearing on the Motion for a

TRO.  (ECF No. 100.)  On February 25, 2013, Plaintiffs filed a Motion for Sanctions

based on the same conduct underlying their Motion for a TRO.  (ECF No. 101.)

Defendant filed its Response to the Motion for a TRO on February 25, 2013.  (ECF No.

104.)  The Court scheduled a hearing for February 27, 2013.  (ECF No. 99.)

On February 27, 2013, prior to the hearing, the Court issued an order denying

Plaintiffs' Emergency Motion for a TRO due to its failure to conform to the specific

requirements of Rule 65(b), but permitting Plaintiffs to make an oral motion at the

hearing to request relief under the Court's inherent powers and/or contempt powers.

(ECF No. 110.)  At the hearing, Plaintiffs made an oral Motion for Injunctive Relief to

restrain communications between Defendant and potential class members, and

requested that the Court hold Defendant's counsel in contempt for violation of the

Court's February 14, 2013 Order.  (ECF No. 118 at 3.)  After hearing evidence and

witness testimony presented by both parties, the Court continued its ruling preventing

further meetings by Defendant until the issuance of the present written Order on

Plaintiffs' Motion for Injunctive Relief and for Contempt.  (*Id.* at 105.)

## II.  ANALYSIS

Plaintiffs' oral Motion for Injunctive Relief and Contempt requests that the Court take remedial measures based upon its inherent powers to oversee this collective action, and asks the Court to hold Defendant's counsel in contempt for violating the Court's February 14, 2013 Order.  (ECF No. 118 at 3.)  For the reasons set forth below, Plaintiffs' Motion for Injunctive Relief and Contempt is granted in part and denied in part, Plaintiffs' Motion for Sanctions (ECF No. 101) is denied as moot, and the Motion for Order to Approve Notice to the Conditional Class (ECF No. 103) is granted with modifications as to Plaintiffs' proposed Notice (*id.* at Ex. C).

### A.    Inherent Powers

"[A] district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties."  *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100-01 (1981).  In *Gulf Oil*, a case dealing with a Rule 23 class action, the Supreme Court recognized that although "[c]lass actions serve an important function in our system of civil justice," they also present "opportunities for abuse."  *Id.* at 99-100 n.10 (1981); *see also Hoffman-La Roche, Inc. v. Sperling*, 493 U.S. 165, 170-72 (1989) (applying *Gulf Oil* to collective actions under Section 216 of the FLSA).  The potential abuses noted by the *Gulf Oil* Court include "[u]napproved communications to class members that misrepresent the status or effect of the pending action."  *Gulf Oil*, 452 U.S. at 101.  Unlike class actions governed by Rule 23, in which potential class members may choose to opt out of the action, FLSA collective actions require potential class members to opt in to the action in

writing in order to become members of the class.  *See* 29 U.S.C. § 216(b).  As in a Rule 23 class action, a court retains authority in a Section 216 collective action to govern the conduct of counsel and parties.  *Sperling*, 493 U.S. at 171.

While a court may exercise discretionary control over a class action, "this discretion is not unlimited."  *Gulf Oil*, 452 U.S. at 101.  If a court issues "an order limiting communications between parties and potential class members[, it] should be based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties."  *Id.* at 101-02.  Any such restrictive order must be narrowly tailored to avoid impinging upon the parties' constitutional rights of free speech and association.  *Id.* at 102.

In a Section 216 action, "in many cases there will be no problem [with communications to putative class members] requiring remedies at all."[1]  *Gulf Oil*, 452 U.S. at 104.  Once conditional certification is granted, communications with the putative class are not prohibited "where a party has not engaged in misleading, coercive, or otherwise abusive communications."  *Longcrier v. HL-A Co., Inc.*, 595 F. Supp. 2d 1218, 1227 (S.D. Ala. 2008); *see, e.g.*, *Parks v. Eastwood Ins. Servs., Inc.*, 235 F. Supp. 2d 1082, 1085 (C.D. Cal. 2002) (permitting communications by defendant that described the case in general terms and stated that employees could contact defendant's counsel with questions).

---

[1] A post-conditional certification case under Section 216 can be analogized to a pre-certification Rule 23 case, in which defendant communications with the putative class are generally permissible.  *See Parks v. Eastwood Ins. Servs., Inc.*, 235 F. Supp. 2d 1082, 1083-84 (C.D. Cal. 2002) (analogizing a post-opt-in Section 216 class to a post-certification Rule 23 class, both of which are covered by attorney-client privilege and ethical rules prohibiting case-related communications by defendant).

To determine when to restrict communication with putative class members, courts evaluate the evidence of actual or threatened abuse by the party sought to be restrained.  *See Kleiner v. First Nat. Bank of Atlanta*, 751 F.2d 1193, 1205 (11th Cir. 1985).  Courts have issued restrictive orders where it is found that the *ex parte* communications "mislead[ ] class members," "misrepresent[ ] the status or effect of the pending action," "coerce prospective class members into excluding themselves from the litigation," or "undermine cooperation with or confidence in class counsel." *Bass v. Pjcomn Acquisition Corp.*, 2011 WL 902022 (D. Colo. Mar. 14, 2011) (citing *Hampton Hardware, Inc. v. Cotter & Co., Inc.*, 156 F.R.D. 630, 632 (N.D. Tex. 1994); *Cox Nuclear Med. v. Gold Cup Coffee Servs.*, 214 F.R.D. 696, 698 (S.D. Ala. 2003)); *Kleiner*, 751 F.2d at 1206.

In addition to restricting potentially misleading, confusing, and coercive communication, courts may find a further reason to restrict communications in a Section 216 post-conditional certification case where a court has already approved a class notice. *Parks*, 235 F. Supp. 2d at 1083.  This is so because "after the Court authorizes a notice in a [Section] 216(b) case, the Court has an interest that no defense communication undermine or contradict the Court's own notice." *Id.*  Thus, in Section 216 cases, "there is no prohibition against pre-'opt-in' communication with a [Section] 216(b) potential plaintiff, unless the communication undermines or contradicts the Court's notice," or is misleading, coercive, or otherwise improper.  *Id.* at 1085; *Goody v. Jefferson Cnty.*, 2010 WL 3834025 at *2 (D. Idaho Sept. 23, 2010) (no prohibition "unless the communication contradicts a court notice, is misleading, or improper").

In the instant case, Plaintiffs allege that Defendant held mandatory staff meetings discussing the lawsuit in which Defendant misled putative class members about the legal proceeding, and attempted to coerce and intimidate them into declining to opt-in.  (ECF No. 97 at 4-5.)  Plaintiffs argue that Defendant told Opt-in Plaintiffs they had a low probability of success, and misinformed them regarding the monetary consequences of the outcome, telling them that if they won, their attorneys' fees would be taken out of their award, and if they lost, they would be liable for Defendant's fees and costs.  (*Id.*)  Plaintiffs argue that Defendant's communication with the Opt-in Plaintiffs was in direct violation of the Court's Order of February 14, 2013, and that in any event, the unilateral communication by Defendants was improper because it was misleading, coercive, and intimidating to the Opt-in Plaintiffs.  (*Id.* at 5-9.)  At the February 27, 2013 hearing, Plaintiffs presented testimony by two Opt-in Plaintiffs who attended meetings at TMCA where the case was discussed, each of whom stated that they were intimidated and confused as a result of the meeting, and that based upon Defendant's statements, they felt that there was no benefit to opting into the lawsuit.  (ECF No. 118 at 46, 54.)  One Opt-in Plaintiff testified that the meeting "came across very one-sided and very hostile."  (*Id.* at 54.)

Defendant admits that the meetings did occur, but claims that the content was unobjectionable because Defendant's counsel prepared scripts, modeled on the previous Court-approved class notice, for its managers and supervisors to read to employees.  (ECF No. 104 at 2-4.)  Defendant has provided the Court with copies of the scripts prepared by its attorneys and read at these meetings.  (*Id.* Exs. A, F.)  Defendant argues that it was free to communicate with employees who had not yet

opted in, because its communication was neither misleading nor coercive and it presented an accurate portrayal of the lawsuit.  (*Id.* at 5-11.)  At the hearing, Defendant presented testimony by a supervisor who held the meetings that Plaintiffs' witnesses attended, attesting that she did not deviate from the script she was given.  (ECF No. 118 at 63.)  Defendant also presented testimony by a Human Resources representative who held several "Open Forum" meetings at PSL prior to those complained of in Plaintiffs' Motion for a TRO, and who confirmed that a similar script was followed, and not deviated from, in those meetings.  (ECF No. 118 at 84; *see* ECF No. 104 Ex. F.)

Because both parties agree that the meetings occurred and the Opt-in Plaintiffs were subject to communications by Defendant, the Court will evaluate the evidence adduced at the hearing to determine if the information Opt-in Plaintiffs received was indeed misleading, confusing, coercive, or improper.

      1.   <u>Violation of the Order of February 14, 2013</u>

Plaintiffs argue that the communication was improper because it contravened the Court's Order of February 14, 2013, in which Plaintiffs' counsel requested Court approval to hold in-person meetings with Opt-in Plaintiffs, and the Court stated that "those will not be allowed."  (ECF No. 109 at 35-36; *see* ECF No. 97 at 3.)  Because Defendant held its "Open Forum" meetings at PSL on February 6 and 7, 2013—prior to the February 14 hearing and order—those meetings could not have been in violation of the Order of February 14, 2013.  (*See* ECF No. 104 at 3.)  However, the mandatory staff meetings at TMCA, of which Plaintiffs complained in their Motion for a TRO, were held on February 21, 2013, *after* the hearing and order of February 14.  (*Id.*)  Therefore, only those meetings held on February 21, 2013 could have been in violation of the

Court's Order.

Defendant argues that the Order of February 14, 2013 was directed at Plaintiffs' counsel, and therefore that it was not clear in prohibiting Defendant's in-person meetings with Opt-in Plaintiffs.  (ECF No. 118 at 35-36.)  Defendant also argues that the meetings it held were "informational," in contrast to Plaintiffs' proposed meetings, which would have been to "encourage participation in joining the lawsuit."  (*Id.* at 26.) At the February 14, 2013 hearing, Defendant's counsel argued that in-person informational meetings would be "rife with possibilities for disaster, more than any other communication method," because the communications would be "impossible to control." (ECF No. 109 at 35.)  Defendant's counsel argued strongly and persuasively that, even "while not intending to mislead," such in-person meetings should be prohibited, and the Court agreed.  (*Id.* at 24-25.)

While Defendant is correct that the focus of the February 14, 2013 hearing was on communications by Plaintiffs' counsel with the Opt-in Plaintiffs, the discussion of the reasoning underlying the Court's Order prohibiting such in-person communications— and Defendant's counsel's role in bolstering that reasoning—made (or should have made) clear to all parties that the Court's control over such communications was paramount.  (*Id.*)  Defendant's argument that its meetings were qualitatively different from Plaintiffs'—and for that reason it understood the Court's Order to apply only to communications by Plaintiffs and not by Defendants—utterly lacks credibility given the context of the February 14, 2013 hearing.

Therefore, after the February 14, 2013 Order, any party's unilateral communication through in-person meetings with the Opt-in Plaintiffs was improper, as it

infringed upon the Court's control over communications, and contravened the purpose of a Court-approved Notice to the class.  "A unilateral communications scheme . . . is rife with potential for coercion."  *Kleiner*, 751 F.2d at 1202.  "Unsupervised, unilateral communications with the plaintiff class sabotage the goal of informed consent by urging exclusion on the basis of a one-sided presentation of the facts, without opportunity for rebuttal."  *Id.* at 1203.  As is apparent from the Court's February 14, 2013 Order prohibiting these communications, Plaintiffs have no opportunity to rebut Defendant's statements, apart from the Notice itself.  (*See* ECF No. 109.)  Thus, the Court finds that Defendant's in-person meetings with Opt-in Plaintiffs after February 14, 2013 were improper, and violated the Order of February 14, 2013.

    2.    <u>Misleading, Confusing, or Coercive Communication</u>

While Defendant admits that the meetings occurred, there is conflicting evidence as to what information was communicated to Opt-in Plaintiffs at those meetings. Defendant's witnesses stated that the scripts Defendant's counsel provided were read verbatim.  (ECF No. 118 at 63, 84.)  In contrast, Plaintiffs' witnesses testified that they recollected additional statements made at the meetings that do not appear in the scripts.  (*See* ECF No. 118 at 45 (testifying that Opt-in Plaintiffs were told "[t]hat we were going to lose, and that we would be responsible for paying HealthONE's attorneys' fees and costs out of our paychecks . . . [and] if we joined the lawsuit, and we won, by some chance, we would have to pay Bachus & Schanker all the winnings"); *id.* at 54 (same).)  Because the evidence shows that, at the very least, the information in the scripts was communicated to the Opt-in Plaintiffs, the Court will first review that information to determine if it was misleading, confusing, or coercive.

The script read to the Opt-in Plaintiffs at the February 21, 2013 meetings included the following statement:

> If the court ultimately rules in plaintiffs' favor, the attorneys at Bachus and Schanker will be entitled to fees for representing you and other members of the conditional class, which in this case will likely be deducted from any final award, should there be one.

(ECF No. 104-1 at 2.)  As Plaintiffs' counsel indicated at the hearing on February 27, 2013, Section 216(b) specifically indicates that a prevailing plaintiff is entitled to reasonable attorneys' fees *in addition* to the judgment award.  (ECF No. 118 at 12 (quoting 29 U.S.C. § 216(b)).)  Thus, Defendant's statement that attorneys' fees will likely be deducted from the final award unequivocally misrepresents the law and misleads Opt-in Plaintiffs into believing that if they prevail, their award will be significantly reduced to pay attorneys' fees.

The Court also finds several parts of Defendant's script likely to confuse, if not coerce, Opt-in Plaintiffs.  The script read at the February 21, 2013 meeting includes the statement that "it is HealthONE's position that those who joined the suit may be liable for HealthONE's costs of suit."  (ECF No. 104-1 at 2.)  While not literally untrue, the use of the term "costs of suit" without explanation may confuse a layperson unfamiliar with the difference between costs and attorneys' fees.  Further, by conveying "HealthONE's position" but not Plaintiffs' position, the statement is one-sided and contravenes the Court's purpose of ensuring that communications to Opt-in Plaintiffs are neutral.

The script also includes a statement regarding Opt-in Plaintiffs' right to file their own lawsuit, as follows:

> You will also have the right to go it alone and file your own lawsuit if you think you have any claims that you've not been able to resolve directly

with HealthONE.  If you do want to file your own lawsuit, know that you have a limited amount of time to file suit before you may lose your rights to do so.

(ECF No. 104-1 at 2.)  While admitting the existence of the statute of limitations, this statement could readily confuse or mislead an Opt-in Plaintiff into believing that she will have the same legal position if she pursues her claim on her own as she will in the instant collective action.  In fact, the Court's order tolling the statute of limitations applies only to this collective action, and lengthens the statutory period by more than ten months for an Opt-in Plaintiff *in this case only*.  (*See* ECF No. 45 (tolling the statute of limitations for Opt-in Plaintiffs as of May 1, 2012).)  An individual plaintiff filing a similar case today would not benefit from this tolling of the limitations period.  Therefore, the Court finds that Defendant's communications at these meetings to its employees—even if only the "scripted" message is considered—contained not only false, but potentially confusing and misleading information.  Moreover, because defense counsel drafted the script, the Court finds that these confusing and misleading statements were not accidental.  *See Belt v. Emcare, Inc.*, 299 F. Supp. 2d 664, 669 (E.D. Tex. 2003).

Finally, the Court must examine "the context in which the communications were made and the effect of the communications" in determining whether, and how much, communication should be restricted.  *Bass*, 2011 WL 902022 at *4.  The context here is of particular concern, as "an employment relationship exists between the parties, which itself may increase the risk that communications will have a coercive effect."  *Id.* (citing *Belt*, 299 F. Supp. 2d at 668).  Because the meetings held at TMCA were mandatory and held by the Opt-in Plaintiffs' employer, the context carries an inherent possibility of

coercion.  Plaintiffs' witnesses both testified to the coercive effect Defendant's communications had on them, stating that they felt intimidated, were concerned about their ability to pay the attorneys' fees of Plaintiffs' lawyers if they prevailed and Defendant's lawyers if they lost, and believed that there was no point to joining the lawsuit because it was "a lose-lose situation."  (ECF No. 118 at 54; *id.* at 46.)  This testimony was uncontradicted at the hearing.[2]  Although the scripts included a statement that "[n]either HealthONE, TMCA nor its leaders will retaliate against you in any way, shape, or form if you decide to join or not join the lawsuit," (ECF No. 104-1 at 2), such assurances do not resolve, let alone eliminate, the coercive effects the statements had on Opt-in Plaintiffs.  *See Belt*, 299 F. Supp. 2d at 668 n.8.  Therefore, the Court finds that both the context and the effect of Defendant's communications exhibit signs of coercion.

As the Court has found from the witness testimony and the script Defendant admitted to reading that Defendant's conduct was misleading, confusing, coercive and improper, the Court need not resolve the conflict in the evidence regarding whether Defendant's meetings included further unscripted communications.  The misleading and confusing statements Defendant admits to making are "the type of communication that the Court has the authority and the duty to restrict."  *Belt*, 299 F. Supp. 2d at 669. Thus, the Court finds that Defendant's conduct warrants remedial measures.

---

[2] Defendant filed two affidavits by potential Opt-in Plaintiffs, both stating that they neither felt intimidated nor feared retaliation after the meetings.  (ECF No. 104 Exs. M, N.)  However, the content of the affidavits focused on attesting to Defendant's adherence to the script, and included no indication as to the effect of Defendant's statements on the affiants' understanding of the lawsuit, or Plaintiffs' likelihood of success and the monetary consequences.  (*Id.*)

**B.      Remedial Action**

Courts have ordered a variety of remedial measures for misleading and improper communications, including prohibiting further *ex parte* communications, issuing corrective notices, extending the opt-in period, and awarding attorneys' fees and costs. *See, e.g.*, *Belt*, 299 F. Supp. 2d at 669-70 (ordering all of the above); *Veliz v. Cintas Corp.*, 2004 WL 2623909, *3 (N.D. Cal. Nov. 12, 2004) (ordering a defendant to issue and pay for a corrective notice).  While such remedies are all within the discretion of the Court, any remedy must be tailored narrowly to avoid treading upon the parties' First Amendment rights.  *See Gulf Oil*, 452 U.S. at 101.

Having considered the parties' arguments and the evidence adduced at the February 27, 2013 hearing, the Court orders remedial measures as follows.

1.      Restriction on Communications

Prior to the conduct at issue here, Defendant had the right to communicate with Opt-in Plaintiffs as long as its communication was not misleading, coercive or improper. *See Longcrier*, 595 F. Supp. 2d at 1227; *Parks*, 235 F. Supp. 2d at 1085.  Defendant indubitably retains the right to communicate with its employees regarding matters outside the scope of this case, whether or not they are Opt-in Plaintiffs.  However, even taking as true Defendant's claim that its meetings "demonstrate[d] its good-faith effort to reach out to employees in a transparent manner without dissuading employees from joining the lawsuit" (ECF No. 119 at 10), the evidence shows that Defendant's meetings exhibited precisely the type of "well-meaning" communication that is nevertheless "rife with possibilities for disaster" of which Defendant's counsel warned the Court.  (ECF

No. 109 at 25, 35.)  Therefore, in order to prevent Defendant from making further misleading and confusing statements to Opt-in Plaintiffs, the Court orders that Defendant may not communicate further with Opt-in Plaintiffs about this case and the claims or defenses in this action until after the opt-in period has closed.[3]

      2.   <u>Corrective Notice</u>

In order to correct the misleading and confusing statements made by Defendant, the Court has prepared a Corrective Notice, attached hereto at Appendix A, which clarifies the most prominent points of potential confusion that the Court identified after the February 27, 2013 evidentiary hearing.  (*See* ECF No. 118 App. A.)

To serve its purpose, the Corrective Notice must be delivered to the Opt-in Plaintiffs that were subjected to Defendant's misstatements prior to the issuance of the class Notice, and should be delivered as expeditiously as possible.  Therefore, the Court orders that Defendant acquire the names and e-mail addresses of all employees who attended these meetings and heard Defendant's statements, and who meet the class definition to be Opt-in Plaintiffs.  If Defendant is unable to identify the individuals who attended a particular meeting, including any of the "Open Forum" meetings at PSL, Defendant must include the names and e-mail addresses of all individuals who were invited to attend the meeting and who meet the class definition.  Within 7 days of this Order, the Corrective Notice shall be sent to all the above-defined individuals through Defendant's e-mail system, with an electronic return receipt or read receipt.  Defendant

---

[3] As Defendant's counsel is undoubtedly aware, ethical obligations prevent it from communicating with an individual who has opted in to the class regarding the subject matter of the case even after the opt-in period has closed.  *See* Colo. R. Prof. Conduct 4.2 (2012).

shall then certify to the Court that the notice has been sent and read receipts have been received, and serve such certification on Plaintiffs.  Plaintiffs shall not distribute the class Notice until after Defendant's confirmation that the Corrective Notice has been sent and received.

      3.    <u>Attorneys' Fees and Costs</u>

      The Court found in Part II.A.1., above, that Defendant violated its Order of February 14, 2013.  Further, Defendant "intentionally attempted to undermine the Court-approved notice," *Belt*, 229 F. Supp. 2d at 669, by purposely holding its meetings prior to the issuance of the Notice.  (ECF No. 104 at 9 ("HealthONE purposefully made the communications well ahead of employees' receipt of the collective action notice."))  As a result, Plaintiffs filed the instant motions so that the Court could remedy Defendant's violation.  Therefore, under the inherent authority of this Court, to punish violations of its orders, the Court awards to Plaintiffs all reasonable attorneys' fees and costs incurred as a result of Defendant's conduct which is the subject of this Order.  This includes the attorneys' fees and costs reasonably incurred by Plaintiffs as a result of their Motion for a TRO, the Motion for Sanctions, and the hearing of February 27, 2013.[4]  On or before March 20, 2013, Plaintiffs shall submit a motion for attorneys' fees and costs, supported by attorney affidavits and time records.  Defendant shall file its response to this motion no later than April 3, 2013.  Plaintiffs' reply shall be filed no later

---

[4] The Court does not anticipate any costs associated with disseminating the Corrective Notice by e-mail, but insofar as such costs are incurred, they shall be borne by Defendant's counsel.

than April 10, 2013.  In the briefing, the parties are to address the issue of whether the award of attorneys' fees and costs should, under the case law and in the circumstances of this case, be borne by Defendant, Defendant's counsel, or both.

Because this Order grants Plaintiffs the remedial relief they requested in their Motion for Sanctions (ECF No. 101),[5] the Court hereby denies that motion as moot.

4.    Class Notice

The Court has reviewed the two versions of the Notice attached to the Motion for an Order to Approve Notice to Conditional Class.[6]  (ECF No. 103 Exs. C, D.)  As a preliminary matter, the Court notes that there are differences of both language and emphasis between the two versions.  Plaintiffs' proposed Notice (ECF No. 103 Ex. C) includes several additional bolded lines and paragraphs that Defendant's proposed Notice (ECF No. 103 Ex. D) presents in normal font.  In addition, Defendant's Notice states: "In the event the lawsuit is not successful, it is HealthONE's position that those who joined the suit will be liable for HealthONE's costs of suit."  (*Id.* at 3.)  In contrast, Plaintiffs' Notice states: "In the event the lawsuit is not successful, it is HealthONE's position that those who joined the suit will be liable for HealthOne's [*sic*] costs but not

---

[5] Plaintiffs' Motion for Sanctions did suggest additional measures the Court might take in response to Defendant's conduct, including reconsideration of the communications restrictions on Plaintiffs' counsel with regard to in-person meetings, television advertisements, and websites.  (ECF No. 101 at 7.)  The Court declines to reconsider such measures; they would not only fail to cure any misleading information already issued by Defendant, but threaten to multiply the confusion.  The Court's Order of February 14, 2013 prohibiting such communications remains in effect as to both parties.

[6] Plaintiffs filed a new version of the Notice on February 28, 2013, in order to incorporate curative measures as a result of Defendant's conduct.  (ECF No. 117.)  In accordance with the Court's decision in the February 27, 2013 hearing to make a final ruling on the Notice based upon the parties' filings up to and including each party's proposed Notice as expressed in ECF No. 103, and not to further revisit this matter, the Court has not considered Plaintiffs' late filing.

attorneys [*sic*] fees.  In the event that Plaintiffs are [not] successful[,] it is Plaintiffs [*sic*] position that those who joint [*sic*] the lawsuit will not be liable for any attorney's [*sic*] fees and costs."  (ECF No. 103 Ex. C at 3.)  Apart from this language and the bolding, the two versions of the Notice are essentially identical.[7]

At the February 27, 2013 hearing, Plaintiffs' counsel exhorted this Court to reconsider the language of the Notice in light of Defendant's conduct at issue here. (ECF No. 118 at 103-04.)  Among other issues, Plaintiffs were concerned with Defendant's failure to convey the risk to Opt-in Plaintiffs that if they chose not to join the lawsuit and instead attempted to file individual claims, the statute of limitations may have expired on those potential claims.  (*Id.* at 91.)  The Court finds the current language in the Notice insufficient to convey this risk, and agrees with Plaintiffs that this clarification should apply to all Opt-in Plaintiffs, not only those directly affected by Defendant's conduct.  Therefore, the Court has amended the Notice, attached hereto at Appendix B.  Section 5 of the Notice shall be titled "Effect of Not Joining This Suit," and after the two paragraphs currently in place, a third paragraph has been added in regular font, reading as follows:

> If you choose not to join this lawsuit and file your own claim, you should be aware that the law may limit your claim to recover unpaid wages and/or overtime compensation going back three years at most from the date you actually file your own lawsuit, instead of the date of May 1, 2012 that would apply if you joined this lawsuit.

---

[7] The two versions of the Notice also contain different postmark deadlines for submitting an Opt-in Plaintiff's Consent to Sue form.  (*See* ECF No. 103 Ex. C ("Monday, May 27, 2013"); Ex. D ("Sunday, May 26, 2013").)  The Court need not select one of these two dates, as the issuance date of the Notice will be postponed until Defendant has complied with the Court's other orders in II.B.2., above, and the postmark deadline must be updated in accordance with the date of mailing.

Further, notwithstanding the typographical errors, the Court finds that the language in Plaintiffs' version of the Notice regarding the difference between fees and costs, and the difference between Defendant's and Plaintiffs' positions if Defendant prevails, is clarifying and aids in a neutral presentation of the case.  (*See* ECF No. 103 Exs. C, D at 3.)  Therefore, the Court has purged of typographical errors the language noted above in Plaintiffs' version of the Notice, and included it in the final version, attached at Appendix B.  Apart from the changes noted here, the Court holds that the Corrective Notice as ordered in II.B.2., above, will suffice as a curative measure for those Opt-in Plaintiffs affected by Defendant's conduct, and after updating the relevant dates in accordance with the date of mailing, no further substantive changes will be made to the Notice.

Regarding the bolded language, in the Order of February 14, 2013, the Court indicated that Plaintiffs would be permitted to change the font and formatting of the Notice as they saw fit.  (ECF No. 109 at 28.)  However, the Court's intention was to permit changes such as a document-wide font change, formatting of paragraphs and headings, and other changes that would affect only the style and not the substance of the Notice.  Insofar as Plaintiffs' requested bolding places emphasis on certain elements to the detriment of others, the bolding affects substance as well as style. Therefore, the Court has limited bolding and underlining in the Notice to those portions that the parties mutually agreed upon, as presented in Defendant's version of the Notice.  (*See* ECF No. 103 Ex. D.)

Finally, the Court adopts the timeline as presented in the proposed order filed by

Defendant, and rules that once Defendant has certified to the Court that it has complied with the Court's orders in II.B.2., above, Plaintiffs shall have 30 days to issue the Notice, the postmark deadline for Opt-in Plaintiffs to mail their Consent forms shall be 60 days after the date the Notice is mailed, and Plaintiffs shall have 30 days after the date of the postmark deadline to notify the Court and Defendant of all class members who have opted in.  (*See* ECF No. 103-5 at 2.)

> 5. Retaliation Prohibited

Although federal law prohibits Defendant from taking any adverse action against employees in retaliation for their participation in this case, *see* 29 U.S.C. § 215(a)(3), in order to be absolutely clear, the Court explicitly orders that Defendant may not take any retaliatory action against Alecia Whitehead and Susan Anderson, who provided testimony for the Plaintiffs at the February 27, 2013 hearing, or any of the Plaintiffs or Opt-in Plaintiffs on the basis of their participation in this case.

## C.   Contempt Powers

At the hearing on Plaintiffs' instant oral motion, Plaintiffs also requested that the Court hold Defendant in contempt for violating the Court's February 14, 2013 Order prohibiting in-person meetings with Opt-in Plaintiffs.  (ECF No. 118 at 3.)

"[C]ourts possess inherent authority to initiate contempt proceedings for disobedience to their orders."  *Young v. U.S. ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 793 (1987).  That authority was codified in statute as follows:

> A court of the United States shall have power to punish by fine or imprisonment, or both, at its discretion, such contempt of its authority, and none other, as--
> (1) Misbehavior of any person in its presence or so near thereto as to

obstruct the administration of justice;
(2) Misbehavior of any of its officers in their official transactions;
(3) **Disobedience or resistance to its lawful writ, process, order, rule, decree, or command.**

18 U.S.C. § 401 (emphasis added).

Federal law distinguishes between civil contempt and criminal contempt. Criminal contempt is punitive rather than remedial; it punishes disobedience of a court order "for the purpose of vindicating the authority of the court." *United States v. United Mine Workers of Am.*, 330 U.S. 258, 302 (1947) (citing *Gompers v. Buck's Stove & Range Co.*, 221 U.S. 418, 441 (1911)).  Civil contempt, however, has "two [possible] purposes: to coerce the defendant into compliance with the court's order, and to compensate the complainant for losses sustained." *Id.* at 303-04.

In the civil contempt context, a plaintiff "has the burden of proving, by clear and convincing evidence, [1] that a valid court order existed, [2] that the defendant had knowledge of the order, and [3] that the defendant[s] disobeyed the order." *F.T.C. v. Kuykendall*, 371 F.3d 745, 756-57 (10th Cir. 2004) (quoting *Reliance Ins. Co v. Mast Constr. Co.*, 159 F.3d 1311, 1315 (10th Cir. 1998)).  From a procedural standpoint, "in civil contempt proceedings all that is required to satisfy the Due Process Clause is that defendants be given reasonable notice and an opportunity to be heard." *Kuykendall*, 371 F.3d at 754 (citing *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 827 (1994)).  However, "[c]ourts traditionally have broad authority through means other than contempt—such as by striking pleadings, assessing costs, excluding evidence, and entering default judgment—to penalize a party's failure to comply with the rules of conduct governing the litigation process." *Bagwell*, 512 U.S. at 833.

-22-

Here, Plaintiffs have specifically requested a finding of civil contempt, to permit an order of remedial measures.  However, in Part II.B., above, the Court ordered remedial and compensatory measures under its inherent powers to manage a collective action under the FLSA.  There is no need to invoke the Court's contempt powers to order additional remedial measures.  Therefore, the Court declines to exercise its contempt powers and denies Plaintiffs' oral motion for a finding of contempt.

## IV.  CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1.     Plaintiffs' Motion for Injunctive Relief is GRANTED;

2.     Defendant shall send the Corrective Notice at Appendix A by e-mail within 7 days of the date of this Order, shall certify to the Court that it has sent the Corrective Notice and that the Corrective Notice has been received, and shall serve such certification on Plaintiffs;

3.     Defendant shall refrain from any further communication with Opt-in Plaintiffs regarding this lawsuit apart from disseminating the Corrective Notice, until after the opt-in period has closed;

4.     Plaintiffs' Motion for Contempt is DENIED;

5.     Plaintiffs' Motion for Sanctions (ECF No. 101) is DENIED as moot;

6.     Reasonable attorneys' fees and costs incurred as a result of Defendant's conduct which is the subject of this Order are awarded to Plaintiffs.  Briefing on the amount of the award of attorneys' fees and costs will proceed as set forth in this Order;

7.     Defendant's Motion for Order to Approve Notice to the Conditional Class (ECF

No. 103) is GRANTED and the Notice attached hereto at Appendix B is approved;

8.      Plaintiffs shall cause the Notice to be sent by the claims administrator to putative class members no later than 30 days following the date of Defendant's Corrective Notice certification as set forth above;

9.      The Notice Period shall be 60 days; all Consents to Participate in Lawsuit returned to the claims administrator by putative class members electing to join the lawsuit shall be postmarked no later than 60 days following the date the Notice is mailed, and the text of the Notice attached hereto at Appendix B shall be updated to reflect the date of mailing; and

10.     Plaintiffs shall have 30 days following the end of the Notice Period to notify the Court of all putative class members who have opted in to the lawsuit by properly submitting Consents to Participate in Lawsuit and shall serve copies of all such Consents to Participate in Lawsuit on Defendant.

Dated this 7th day of March, 2013.

BY THE COURT:

William J. Martínez
United States District Judge

**APPENDIX A**

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 11-cv-02888-WJM-MJW

LISA STRANSKY,
NATALIE FIORE,
ERIN PEREZ,
HELEN GEIST,
ANGELA VANLENGEN,
BROOKE THOMPSON,
MILDRED HAMILTON, and
NICOLE WAGNER,

individually and on behalf of others
similarly situated,

      Plaintiffs,

v.

HEALTHONE OF DENVER, INC.,

      Defendant.

---

## CORRECTIVE NOTICE

---

You may have attended a meeting in January or February, 2013, at a HealthONE medical facility in which a statement was read regarding a lawsuit brought by a group of nurses at TMCA.  The statement that was read to you was not approved by the Court, and the Court did not authorize HealthONE to read the statement.  Because the statement contained misleading information, the Court has ordered this Corrective Notice to be sent to you.  This notice has been approved by the Court.

**The Court is Neutral in This Matter.**

The Court takes no position in this case.  The Court cannot predict the outcome of the case or how long it will take to reach an outcome.  Please do not direct any questions regarding this lawsuit to the Court.  You will receive a notice by mail in approximately one month that explains more information about the lawsuit, and contains the paperwork you need if you decide to join the lawsuit.  That notice has been approved by the Court.  If you have further questions about this lawsuit, you may contact the lawyers for the Plaintiffs through the class administrator at 1-877-935-7914, or using the contact information at the end of this message.  You may also contact an independent lawyer of your choice.

**If Plaintiffs Prevail in This Lawsuit, Attorneys' Fees Will Not Be Deducted From Their Monetary Award.**

This lawsuit has been brought under the Fair Labor Standards Act ("FLSA").  The FLSA provides that, if HealthONE failed to pay wages and overtime to which Plaintiffs were legally entitled, Plaintiffs—and those who join the lawsuit—are entitled to recover all of the pay they did not receive during the two years prior to May 1, 2012 (or three years if, as Plaintiffs have alleged, HealthONE's failure to pay is found to have been willful).

In addition, if Plaintiffs prevail, they would be entitled to receive an equal amount to those unpaid wages and overtime as "liquidated damages," and an additional award to cover Plaintiffs' attorneys' fees and costs.

Therefore, you should disregard HealthONE's statement that attorneys' fees "in this case will likely be deducted from any final award, should there be one."  If Plaintiffs prevail, they would be entitled to have their attorneys' fees paid in addition to the other compensation they receive.  Any monetary award will not be reduced to pay attorneys' fees.

**If HealthONE Prevails in This Lawsuit, Plaintiffs May Be Liable For Its Costs, But Not Its Attorneys' Fees.**

If, at the conclusion of the case, it is determined that HealthONE has not failed to pay wages and/or overtime to which Plaintiffs were legally entitled, HealthONE will prevail in the lawsuit and Plaintiffs may be required to compensate HealthONE for its costs, but will not be liable to pay HealthONE's attorneys' fees.  Costs can include the charges for filing documents in court, service of process, court reporters and transcripts, fees paid to expert witnesses, travel costs for witnesses and attorneys, and mailing and photocopying of documents.  Costs do not include the fees HealthONE pays to its lawyers for their work.

**If You Choose Not to Join This Lawsuit and Want to File Your Own, Your Claim Will Be Subject to Time Limits.**

You have the right to file your own lawsuit instead of joining this lawsuit.  Under the FLSA, workers can make claims for unpaid wages and overtime going back two years from the date the lawsuit is filed, or three years if the failure to pay was willful.  The Court has frozen that time period for those who choose to join this lawsuit, so that if you join, your claim can include the two or three years going back from May 1, 2012. However, the Court has frozen the time limit only for this lawsuit, so if you do not join this lawsuit and you file a lawsuit on your own, you may not have a right to make a claim for unpaid wages or overtime that occurred more than two or three years before the date you file your lawsuit.

**Retaliation for Taking Part in This Lawsuit Is Prohibited.**

Federal law prohibits HealthONE from taking any adverse action against you for joining or participating in this lawsuit.  That means you cannot be fired, sued, demoted, punished, or otherwise discriminated against for participating in this suit.  If you believe

you have been discriminated against, or disciplined in any way as a result of your considering whether to join or actually participating in this lawsuit, you may contact Plaintiffs' lawyers or another lawyer of your choice.  However, do not contact HealthONE or any HealthONE managers or supervisors regarding this issue.

Until you have had a complete opportunity to decide whether to join this lawsuit, HealthONE is not permitted to discuss this lawsuit with you.  If you choose to join the lawsuit, HealthONE will not be permitted to discuss the lawsuit with you until it is over. If you choose not to join this lawsuit, HealthONE will be permitted to discuss the matters in the case with you in a few months, after the opportunity to join has ended.  In the meantime, if you receive any further communications from HealthONE regarding this lawsuit, please contact Plaintiffs' lawyers immediately.

**Direct Any Questions to Plaintiffs' Lawyers.**

If you have questions about this lawsuit, you can ask Plaintiffs' lawyers or an independent lawyer of your choice before you decide whether to join.  Please do not direct any questions to the Court.  You can contact Plaintiffs' lawyers at:

J. Kyle Bachus
Colleen T. Calandra
BACHUS & SCHANKER, L.L.C.
1899 Wynkoop Street, Suite 700
Denver, Colorado 80202
Phone: (303) 893-9800
Fax: (303) 893-9900

E-mail: kbachus@coloradolaw.net
colleen.calandra@coloradolaw.net

**APPENDIX B**

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 11-cv-02888-WJM-MJW

LISA STRANSKY,
NATALIE FIORE,
ERIN PEREZ,
HELEN GEIST,
ANGELA VANLENGEN,
BROOKE THOMPSON,
MILDRED HAMILTON,
NICOLE WAGNER

individually and on behalf of others
similarly situated

Plaintiffs,

v.

HEALTHONE OF DENVER, INC.,

Defendant.

---

## NOTICE OF LAWSUIT

**TO:**   All current or former non-exempt employees employed on or after May 1, 2009 by HealthOne of Denver, Inc. at Medical Center of Aurora, Presbyterian/St. Luke's Medical Center, Rose Medical Center, Swedish Medical Center, and Sky Ridge Medical Center who performed any job that:

(1) Required that person to change into and out of scrubs on Defendant's premises before clocking in and after clocking out;

and/or

(2) Who were required to remain on call and were required to perform work duties while clocked out on meal breaks that were not paid.

**RE:**   Fair Labor Standards Act lawsuit against HealthONE of Denver, Inc.

## 1.    INTRODUCTION

The purpose of this Notice is to:

(i) inform you of the existence of a collective action lawsuit pending against HEALTHONE OF DENVER, INC. (hereinafter, "HealthONE") for a wage and hour claim alleging violations of the Fair Labor Standards Act (hereinafter, "FLSA") and the Colorado Wage Claim Act (hereinafter, "CWCA");

(ii) to advise you of how your rights might be affected by this lawsuit; and

(iii) to instruct you on the procedure for participating in this lawsuit. You have been sent this notice because employment records indicate that you may be an eligible member of the Plaintiffs' conditionally-certified class.

## 2.   DESCRIPTION OF THE LAWSUIT

On November 7, 2011, Lisa Stransky and Natalie Fiore, on behalf of themselves and others similarly-situated, filed a lawsuit in the United States District Court for the District of Colorado against HealthONE. Since that time, six other individuals joined in the lawsuit (collectively referred to as "Plaintiffs") prior to collective action certification.

You are one of 11,270 people being notified about this lawsuit.

The lawsuit alleges that HealthONE violated the FLSA by failing to compensate:

> All current or former non-exempt employees employed on or after May 1, 2009 by HealthOne of Denver, Inc. at Medical Center of Aurora, Presbyterian/St. Luke's Medical Center, Rose Medical Center, Swedish Medical Center, and Sky Ridge Medical Center who performed any job that:
>
> (1) Required that person to change into and out of scrubs on Defendant's premises before clocking in and after clocking out;
>
> and/or
>
> (2) Who were required to remain on call and were required to perform work duties while clocked out on meal breaks that were not paid.

The Plaintiffs sued HealthONE to recover unpaid compensation on behalf of themselves and those similarly situated.  Plaintiffs are also seeking liquidated damages in an amount equal to the unpaid compensation, attorneys' fees and costs.  If Plaintiffs are successful in this claim, attorneys' fees and costs will be paid by HealthONE as approved by the Court.  In the event the lawsuit is not successful, it is HealthONE's

position that those who joined the suit will be liable for HealthONE's costs, but not attorneys' fees. In the event that Plaintiffs are not successful, it is Plaintiffs' position that those who joined the lawsuit will not be liable for any attorneys' fees or costs.

HealthONE denies Plaintiffs' claims and allegations and contests all claims that have been asserted. HealthONE asserts that it complied with the FLSA and CWCA and properly compensated all of its employees for all time worked and has raised a number of affirmative defenses to Plaintiffs' claims.

The Court has not ruled on or decided any of these issues, including the merits of the claims or defenses.

## 3.  YOUR RIGHT TO PARTICIPATE IN THIS SUIT

If you fit in the description in paragraph number two (2) above, and if you believe that HealthONE has violated the FLSA, and thereby failed to pay you any unpaid wages and/or overtime compensation to which you may be entitled, you may have the right to make a FLSA claim against HealthONE in this lawsuit to recover any unpaid wages and/or overtime compensation and an additional amount in liquidated damages, and costs, as well as attorney's fees for Plaintiffs' counsel in this lawsuit. It is entirely your own decision whether to join this lawsuit.

## 4.  EFFECT OF JOINING THIS SUIT

If you choose to join this lawsuit, you will be bound by any judgment on any claim you may have under the FLSA, whether favorable or unfavorable. That means that, if you win, you may be eligible to share in the monetary award; if you lose, no money will be awarded, and you will not be able to file another lawsuit regarding the matters raised in the lawsuit.

While this lawsuit is proceeding, you may be required to respond under oath to written questions, to have your deposition taken, to produce documents, and/or to testify in court at a trial or hearing in the United States federal courthouse in Denver, Colorado.

## 5.  EFFECT OF NOT JOINING THIS SUIT

If you choose not to join this lawsuit, you will not be affected or bound by any judgment, favorable or unfavorable, on any of the claims brought under the FLSA that are alleged in this lawsuit; in other words, if you do not file a Consent to Sue form, you will not receive any back overtime wages or other relief granted under this lawsuit if plaintiffs prevail on their FLSA claims.

If you choose not to join this lawsuit, you retain all rights, if any, that you may have under the FLSA and are free to file your own lawsuit or complaint with the U.S. Department of Labor; however, recovery for any alleged FLSA claim you may have would be obtainable by you only if you file your own lawsuit or Department of Labor complaint within the time provided by law, and you actually prevail on your claims.

If you choose not to join this lawsuit and file your own claim, you should be aware that the law may limit your claim to recover unpaid wages and/or overtime compensation going back three years at most from the date you actually file your own lawsuit, instead of the date of May 1, 2012 that would apply if you joined this lawsuit.

## 6.  YOUR LEGAL REPRESENTATION IF YOU JOIN

The attorneys for Plaintiffs and the proposed opt-in class are the law firm of Bachus & Schanker, L.L.C.   Their address, emails and telephone numbers are:

**J. Kyle Bachus**
**Colleen T. Calandra**
**BACHUS & SCHANKER, L.L.C.**
**1899 Wynkoop Street, Suite 700**
**Denver, Colorado 80202**
**Phone: (303) 893-9800**
**Fax: (303) 893-9900**

**Email: kbachus@coloradolaw.net**
**colleen.calandra@coloradolaw.net**

*Attorneys for Plaintiffs and Opt-in Plaintiffs*

If you choose to join the lawsuit, the law firm listed above will be representing you unless you obtain another attorney.

You will not be required to pay any attorneys' fees or court costs to the Plaintiffs' lawyers. Rather, in the event the Plaintiffs prevail in the lawsuit, either by judgment or settlement, the Plaintiffs' attorneys will be requesting that the Court order HealthONE to pay the Plaintiffs' lawyers their reasonable attorneys' fees and reimburse them for any expenses. The Court must approve any fees received by the Plaintiffs' lawyers.

## 7.  HOW TO JOIN THIS LAWSUIT

**If you wish to join this lawsuit, you must complete, sign and mail the enclosed Consent to Sue form in the enclosed stamped envelope to**:

### HealthONE FLSA Administrator
### c/o Class Action Administration, Inc.
### PO Box 6877
### Broomfield, CO 80021

Your signed Consent to Sue form, which is attached as Exhibit A, must be postmarked by Monday May 27, 2013, in order for you to be eligible to participate in this lawsuit.

If you wish to join this lawsuit, return the signed Consent to Sue form attached as Exhibit A as soon as possible, but no later than <u>Monday, May 27, 2013</u>, to preserve any legal right you may have to participate in this lawsuit.

Until the Consent to Sue form is filed with the Court, the statute of limitations ordinarily continues to run, and you will not be entitled to receive compensation for the days during which you delay sending in your Consent to Sue form.

## 8.  DEADLINE

**Your completed Consent to Sue form attached as Exhibit A must be postmarked by <u>Monday May 27, 2013</u>, in order to be eligible to participate in the lawsuit. You should ensure that it is received by HealthONE FLSA Administrator before that date.**

If you have already submitted Consent to Sue form, you do not need to submit another one at this time. If you do not return the Consent to Sue, you are free to file at any time your own individual lawsuit against HealthONE or your own individual complaint with the Department of Labor, so long as the three-year period for willful or two-year period for non-willful violations has not expired.

## 9.  NO OPINION EXPRESSED AS TO MERITS OF LAWSUIT

This Notice is for the sole purpose of providing current and former HealthONE workers with information concerning their potential right to join this lawsuit. Although this Notice and its contents have been authorized by the Court, the Court takes no position regarding the merits of Plaintiffs' claims or HealthONE's defenses, and there is no assurance that the Court will grant any relief to the Plaintiffs.

## 10.  NO RETALIATION PERMITTED

**The FLSA prohibits employers, such as HealthONE, from discriminating or retaliating against or taking adverse actions against any person for filing a lawsuit, claim or complaint for compensation, assisting or testifying in a lawsuit under the FLSA, or otherwise participating in a proceeding or exercising their rights under the FLSA.**

## 11.  QUESTIONS REGARDING THIS NOTICE

If you have any questions regarding this notice, you can contact the law firm representing this class of employees through the claims administrator Class Action Administration, Inc. at **1-877-935-7914.**

## 12.  LEGAL COUNSEL

The Attorneys representing the Plaintiffs in this matter are as follows:



**J. Kyle Bachus**
**Colleen T. Calandra**
**BACHUS & SCHANKER, L.L.C.**
**1899 Wynkoop Street, Suite 700**
**Denver, Colorado 80202**
**Phone: (303) 893-9800**
**Fax: (303) 893-9900**
**Email: kbachus@coloradolaw.net;**
**colleen.calandra@coloradolaw.net**
***Attorneys for Plaintiffs and Opt-in Plaintiffs***

# PLEASE DO NOT ATTEMPT TO CONTACT THE COURT REGARDING THIS LAWSUIT.